UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:18-CV-2078 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ONE 2015 CADILLAC ATS COUPE, | : | FEBRUARY 6, 2023 |
| VIN 1G6AJ1RX2F0136679 et al. | : | |
|     Defendants, | : | |
| | : | |

**RULING ON MOTION FOR DEFAULT (DOC. NO. 40)**

## I.   INTRODUCTION

The United States of America ("the Government") brings this action seeking forfeiture of three vehicles allegedly used by Carlos Delgado ("Mr. Delgado") in connection with narcotics trafficking.  The defendant vehicles ("the Vehicles") are: One 2015 Cadillac ATS Coupe ("the Cadillac"), VIN 1G6AJ1RX2F0136679; One 2013 Toyota 4Runner SR5 Limited Trail ("the 4Runner"), VIN JTEBU5JR4D5145750; and One 2005 Toyota Tacoma Extended Cab X-Runner ("the Tacoma"), VIN 5TETU22N65Z096018.

Now before the court is the Government's unopposed Motion for Default for Failure to Comply with Discovery Orders ("Mot. for Default") (Doc. No. 40).  For the reasons explained below, the Government's Motion is **granted** in part.

1

II.     BACKGROUND

In his criminal case, Mr. Delgado was originally indicted on August 7, 2018. See Indictment, 18-cr-165 (Doc. No. 1). Mr. Delgado proceeded to trial, where the Government presented evidence that Mr. Delgado had overseen an operation that used the U.S. Postal Service to send drugs and drug proceeds between Connecticut and Puerto Rico. See Summary Order Affirming District Court Judgment, U.S. v. Delgado, 21-19-cr (2d Cir. 2021) (Doc. No. 148). On January 22, 2020, a jury found Delgado guilty of Conspiracy to Distribute and to Possess With Intent to Distribute 5 Kilograms or More of Cocaine; Possession With Intent to Distribute One Kilogram or More of Heroin; and Unlawful Possession of a Firearm by a Convicted Felon. See Jury Verdict, 18cr165 (Doc. Nos. 288, 294). Ultimately, this court sentenced Mr. Delgado to 25 years of imprisonment. See Judgment, 18-cr-165 (Doc. No. 388).

On December 19, 2018, the Government filed its Complaint in the instant civil forfeiture action, alleging that the Vehicles were used, or intended to be used, to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq. On or about January 29, 2019, the Government notified Mr. Delgado that, in order to avoid forfeiture of the Vehicles, he needed to "file a verified claim within 35 days after the date of this notice or the date of delivery" followed by an "answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure within 25 days after filing the verified claim." See Motion to Strike at 2 (Doc. No. 26). This notice inaccurately informed Mr. Delgado that he had "25 days" from the filing of his Verified Claim to file

his Answer or Motion to Dismiss, misstating the 21-day deadline set forth in the Federal Rules of Civil Procedure. Fed. R. Civ. P. Supp. R. G(5)(b).

Mr. Delgado filed his Verified Claim on March 4, 2019, 35 days after the Government's January 29 Notice. See Verified Claim (Doc. No. 6). Fourteen days later, on March 18, 2019, Mr. Delgado filed a Motion to Stay the action pending the outcome of his criminal case. See Motion to Stay (Doc. No. 7). The court granted his Motion to Stay on March 28, 2019. See Order Granting Motion to Stay (Doc. No. 10). The stay remained in place until June 7, 2022, while Mr. Delgado unsuccessfully pursued appeals in his criminal case. See Order Lifting Stay (Doc. No. 25).

Ten days after the court lifted the stay, on June 17, 2022, the Government filed a Motion to Strike (Doc. No. 26) and a Motion for Forfeiture (Doc. No. 27). On August 4, 2022, the court granted the Government's Motion to Strike, determining that Mr. Delgado lacked statutory standing to bring his claim because he failed to file an Answer to the Complaint as required by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. See Ruling on Motion to Strike at 8 (Doc. No. 28). On the same day, the court ordered the government to file either a Motion for Summary Judgment—one that relied upon admissible evidence rather than the hearsay upon which the Motion for Forfeiture was based—or a Notice outlining what discovery it intends to conduct. See Order (ECF 29).

On August 8, 2022, the government proposed serving interrogatories and requests for production on Mr. Delgado, with a deposition of Mr. Delgado to take place within 30 days of receipt of his responses. See Proposed Discovery Plan (Doc. No. 30). This plan was adopted by the court, see Order (ECF 31), and the Government

proceeded to serve discovery on Mr. Delgado, <u>see</u> Status Report (Doc. No. 32). Interrogatory number five asked Mr. Delgado if he contends that the defendant assets were not engaged in drug trafficking, as well as asking him to state every fact and identify every witness and document that supports that contention.  <u>See</u> Government's First Set of Interrogatories to Claimant Carlos Delgado ("Government's Interrogatories") at 3 (Doc. No. 45).

Although Mr. Delgado's responses were due by September 9, 2022, the Government did not receive anything from Mr. Delgado by that date.  <u>See</u> <u>id.</u>  In a phone call with the Government on September 21, 2022, "Mr. Delgado confirmed receipt of the discovery, but did not indicate when he would be completing his responses or if he had any objections to the discovery requests."  Order (ECF 33). During the call, Mr. Delgado also represented that part of the reason for his delay in responding to the discovery requests was his placement in segregation.  <u>See</u> <u>id.</u> However, the Bureau of Prisons ("BOP") has a Program Statement 1315.07 (11/5/99), which states, in relevant part:

> With consideration of the needs of other inmates and the availability of staff and other resources, *the Warden shall provide an inmate confined in disciplinary segregation or administrative detention a means of access to legal materials, along with an opportunity to prepare legal documents*.  The Warden shall allow an inmate in segregation or detention a reasonable amount of personal legal materials.  In no case shall the amount of personal legal materials be such as to pose a fire, sanitation, security, or housekeeping hazard.  A reasonable amount of personal legal material in segregation or detention is approximately one cubic foot.  Greater amounts may be allowed when an inmate has an imminent court deadline.  The Regional Counsel should be consulted before accumulation of legal materials is limited for housekeeping reasons.

<u>See</u> Government's Report Regarding the Court's Order at Docket #33 at 2 (Doc. No. 34) (emphasis added).  Notwithstanding clarification that Mr. Delgado was able to

respond,[1] the court still extended his time to answer the discovery requests until November 22, 2022. See Order (ECF 35). In the same Order, the court cautioned Mr. Delgado that "[f]ailure to comply will likely lead to default." Id.

On November 4, 2022, the court—sua sponte—extended the deadline two more weeks to December 6, 2022, "effectively giving Mr. Delgado a three-month extension." See Order (ECF 37). Despite the numerous extensions he received, Mr. Delgado failed to provide the Government a single response to its discovery requests by the new deadline. See Status Report re: Docket Entry 38 at 1. Accordingly, on December 12, 2022, the Government filed a Motion for Default for Failure to Comply with the Court's Discovery Orders. See Mot. for Default. Mr. Delgado was then ordered to show cause why the Government's Motion should not be granted. Amended Order to Show Cause (ECF 41). The Order to Show Cause set a response deadline of January 17, 2023. To ensure Mr. Delgado had an opportunity to respond, the court required that the Motion and Order be "provided to Mr. Delgado's counselor with a request to provide it to Mr. Delgado directly", in addition to being sent to him by mail. Id. On December 19, 2022, the Government confirmed compliance with the court's service instructions and relayed the Bureau of Prisons' verification that Mr. Delgado had received both documents. See Notice Regarding Service (Doc. No. 43).

---

[1] It should be noted that on October 17, Mr. Delgado filed a Motion for Copies of Exhibits from the trial in his related criminal case. See Motion for Copies of Exhibits, 18-cr-165 (Doc. No. 425). On the same day, he drafted a Motion for Extension of Time in this case, requesting a six-month extension to reply to the Government's requests. See Motion for Extension of Time ("Mot. for Extension of Time") at 1 (Doc. No. 36). Mr. Delgado also filed a follow up request for exhibits from his criminal trial on January 3, 2023. See Motion for Access to Exhibits 96 & 96A Received in Evidence at Trial, 18-cr-165 (Doc. No. 433). As such, it appears that Mr. Delgado's lack of compliance with the Government's discovery requests was not due to an inability to access necessary legal materials.

To date, Mr. Delgado has not provided any response to either the Government's discovery requests or the court's Order to Show Cause.[2]  The court now considers the Government's Motion for Default.

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(b)(2), the court may impose sanctions on a party that "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2).  "An order enforceable under Rule 37(b) need not, however, have been issued under a particular rule, so long as its effect was to require a party 'to provide or permit discovery.'" Trs. of the Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc., 2020 WL 1172635, at *5 (E.D.N.Y. Feb. 20, 2020); see also Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991) ("The language of Rule 37(b)(2) requires a prior order . . . but does not by its terms specifically require an order issued pursuant to Rule 37(a).").  The court may also order sanctions pursuant to Rule 37(d) if "a party, after being properly served with interrogatories under Rule 33 . . . fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d).

Rule 37 lists possible sanctions for such conduct, including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action" and "rendering default judgment against the disobedient party." See Fed. R. Civ. P. 37 (b)(2)(A)(i)-(vii); see also Fed. R. Civ. P. 37 (d)(3).  District courts possess "wide discretion" in assessing the appropriateness of sanctions under Rule 37.

---

[2] Again, this stands in contrast to his active motion practice in his criminal case.  See Motion for Copies of Exhibits, 18-cr-165; Motion for Access to Exhibits 96 & 96A Received in Evidence at Trial, 18-cr-165.

6

Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 135 (2d Cir. 2007).  In exercising that discretion, the Second Circuit has identified several relevant factors to consider, including, "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." S. New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d. Cir. 2010) (citation and quotation omitted).  These factors are instructive rather than exclusive, "and they need not each be resolved against the party [facing sanctions]. . . ." Id.  Additionally, the district court may "consider the full record in the case in order to select the appropriate [Rule 37] sanction." Id. (citation and quotation omitted).

## IV.   DISCUSSION

The Government argues that the court should enter default judgment against Mr. Delgado due to his failure to respond or object to the interrogatories it sent as well as his failure to comply with court orders directing him to do so.[3] See Mot. for Default at 1. After considering the record in this case and the four factors laid out by the Second Circuit in S. New England Telephone Co., the court concludes that the appropriate sanction is designating certain "facts . . . as established for purposes of the action. . . ." Fed. R. Civ. P. 37 (b)(2)(A)(i).

---

[3] The Government requested that the court impose the sanction of default judgment, as contemplated in Federal Rule 37(b)(2)(A)(vi).  While the court would otherwise be inclined to grant the Government's Motion in light of Mr. Delgado's willful and prolonged noncompliance, such a remedy is not available here.  The Vehicles are the defendants in this case, not Mr. Delgado.  As such, default judgment cannot be rendered "against the disobedient party" as Federal Rule 37(b)(2)(A)(vi) states.  Instead, the court is imposing a Rule 37 sanction that will keep the case moving forward and is well-tailored to Mr. Delgado's failure to comply with discovery.

1. Willfulness of Mr. Delgado's Noncompliance

Failure to comply may be construed as willful "when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." Nieves v. City of New York, 208 F.R.D. 531, 535 (E.D.N.Y. 2013) (citation and quotation omitted). In various Orders, the court has articulated precisely what was required of Mr. Delgado. On August 10, 2022, the court adopted the Government's proposed discovery plan, which included a schedule for interrogatories and requests for production, a deposition of Mr. Delgado, and, likely, a motion for summary judgment. See Order (ECF 31). Yet, even though Mr. Delgado's responses to the interrogatories and requests for production were due on September 9, 2022, the Government received no discovery by that date. See Order (ECF 33). The court extended the discovery deadline until November 22, 2022, but explicitly warned Mr. Delgado that "[f]ailure to comply will likely lead to default." Id. After Mr. Delgado requested more time, the court—sua sponte—extended the deadline further to December 6, 2022, which amounted—in total—to a three-month extension. See Order (ECF 37). Now, nearly five months after the original deadline, Mr. Delgado has still produced nothing.

The only potential factor beyond Mr. Delgado's control is his time spent in segregation, and the impact that may have had on his ability to respond. However, there are a few reasons to believe that his time in more restrictive BOP custody did not prevent his compliance with court-ordered discovery. First, as the Government pointed out, BOP has a Program Statement 1315.07 (11/5/99), which notes that "the Warden shall provide an inmate confined in disciplinary segregation or administrative detention a

8

means of access to legal materials, along with an opportunity to prepare legal documents." See Government's Report Regarding the Court's Order at Docket #33 at 2.  Second, in October, Mr. Delgado filed an extension request in this case and a request for copies of exhibits from his trial in his related criminal case.  See Mot. for Extension of Time; Motion for Copies of Exhibits, 18-cr-165.  This suggests that Mr. Delgado was able to access essential legal materials as needed.  So, even if there had been a brief period during which Mr. Delgado was unable to comply with discovery demands, such a time has long since passed.  Therefore, the court concludes that Mr. Delgado's continuing noncompliance is willful.

2. Efficacy of Lesser Sanctions

The next consideration is the "efficacy of lesser sanctions."  Here, the lesser sanctions contemplated in Federal Rule 37 are ill-equipped to address Mr. Delgado's ongoing noncompliance.

One lesser sanction delineated in Rule 37 entails "staying further proceedings until the order is obeyed. . . ."  Fed. R. Civ. P. 37(b)(2)(A)(iv).  Such a measure is poorly tailored to remedying the conduct at issue, as it would allow this four-year-old case to stall indefinitely.  Additionally, Mr. Delgado's lack of statutory standing to assert claims to the Vehicles provides further support for the conclusion that a stay would be ineffective.  Because Mr. Delgado cannot lay claim to the Cadillac, the 4Runner, or the Tacoma, he has no incentive to comply with the court's Order and the Government's request for discovery that will facilitate forfeiture.  This matter has been stayed long enough while Mr. Delgado appealed his underlying criminal case, and the court cannot allow this civil action to persist forever.

Mr. Delgado's lack of statutory standing also renders useless the sanction of "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).  Nor is there any indication that a monetary sanction—though available against pro se litigants, Hewett v. Triple Point Tech., 2015 WL 6675529, at *7 (D. Conn. Oct. 30, 2015)—is one Mr. Delgado has the capacity to pay, let alone is befitting of his conduct or capable of remedying his noncompliance.

Thus, the least severe sanction commensurate with Mr. Delgado's non-compliance is directing "that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i).

### 3.  Duration of Noncompliance

Mr. Delgado has failed to comply with the Government's interrogatory request since September 9, 2022.  See Status Report (Doc. No. 32).  Moreover, on October 25, 2022, the court directly ordered Mr. Delgado to answer the Government's discovery request by November 22, 2022 (which was later extended to December 6, 2022), and yet, months later, he still has not done so.  "Periods of noncompliance as brief as a few months may merit dispositive sanctions . . . [a]nd periods greater than five months favor such sanctions even more heavily."  Ramgoolie v. Ramgoolie, 333 F.R.D. 30, 37 (S.D.N.Y. 2019); see also Embuscado v. DC Comics, 347 F. App'x 700, 701 (2d Cir. 2009) (allowing the sanction of dismissal where a litigant violated court orders on discovery for three months); Georgiadis v. First Boston Corp., 167 F.R.D. 24, 25 (S.D.N.Y. 1996) (approving dismissal pursuant to Rule 37 following "nearly four months"

of noncompliance). Accordingly, Mr. Delgado's period of noncompliance is sufficient to warrant the sanction being imposed.

### 4. Warnings of Noncompliance

This court clearly warned Mr. Delgado of the <u>likely</u> consequence of his continued noncompliance: "[f]ailure to comply will likely lead to default." See Order (ECF 35). Furthermore, the fact that Mr. Delgado is a <u>pro se</u> party does not spare him of his obligation to comply with court orders. "[A]ll litigants, including pro ses, have an obligation to comply with court orders. . . ." <u>Agiwal v. Mid Island Mort. Corp.</u>, 555 F.3d 298, 302 (2d Cir. 2009) (citation omitted). "While a court is ordinarily obligated to afford a special solicitude to <u>pro se</u> litigants, . . . sanction may nonetheless be appropriate so long as a warning has been given. . . ." <u>Koehl v. Bernstein</u>, 740 F.3d 860, 862 (2d Cir. 2014) (citation and quotation omitted). Like any other litigant, a <u>pro se</u> party who flouts his obligation to adhere to court orders "must suffer the consequences of [his] actions." <u>McDonald v. Head Crim. Ct. Supervisor Officer</u>, 850 F.2d 121, 124 (2d Cir. 1988). In this case, there can be no doubt that Mr. Delgado was warned and yet flouted his obligation to comply.

### V. CONCLUSION

For the foregoing reasons, the court **grants** in part the Government's Motion, deeming as admitted that the defendant assets facilitated, were engaged in, and used in furtherance of Mr. Delgado's drug trafficking. With these facts established for the purposes of this action, the Government is directed to file a Motion for Forfeiture of the defendant Vehicles in reliance upon the facts deemed admitted in this Ruling as well as any other admissible evidence. See <u>United States v. Sum of $185,336.07 U.S.</u>

Currency Seized from Citizen's Bank Acct. L7N01967, 731 F.3d 189, 198 n.8 (2d Cir. 2013) (quoting United States v. $92,203.00 in U.S. Currency, 537 F.3d 504, 510 (5th Cir.2008) ("[B]y enacting CAFRA, Congress intended to end the practice of reliance on hearsay in civil forfeiture decisions.").

**SO ORDERED.**

Dated at New Haven, Connecticut this 6th day of February 2023.

    /s/  Janet C. Hall  
Janet C. Hall  
United States District Judge